**UNITED STATES DISTRICT COURT**
**District of Minnesota**

JOYCE E. LAMBERT,

Plaintiff,

v.

**ORDER**

Civ. No. 00-2580 (MJD/JSM)

JOHN E. POTTER,
UNITED STATES POSTMASTER GENERAL
and UNITED STATES POSTAL SERVICE, and
JUDITH THON, individually,

Defendants.

Celeste E. Culberth, Culberth Lienemann & Stratton, for, and on behalf of the Plaintiff.

Friedrich Anson Paul Siekert, Assistant U.S. Attorney, for, and on behalf of the Defendants.

## I. INTRODUCTION

This matter is before the Court upon Defendants' Motions for summary judgment. The named defendants are United States Postmaster General, John Potter and the United States Postal Service (collectively, "USPS Defendants"). Judith Thon is also a named defendant. Joyce E. Lambert, the plaintiff, alleges that she was subjected to sexual harassment, differential treatment, and retaliation, all in violation of Title VII. Lambert also asserts a disability discrimination claim under the Rehabilitation Act and retaliation under the Family Medical Leave Act ("FMLA").

## II. FACTUAL BACKGROUND

Lambert began her career with the USPS in 1985. In January 1995 she began working as the Manager of Distribution Operations (MDO) at the St. Paul Processing and Distribution

FILED FEB - 3 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Center (SP&DC). She was assigned to work Tour 3 from approximately 2:00 to 10:30 p.m. Lambert was the only female MDO in SP&DC.

In May 1996, Judith Thon became the Plant Manager of the SP&DC. Lambert reported directly to Thon. As Plant Manager, Thon did year-end evaluations for Lambert for the fiscal years of 1996, 1997, 1998 and 1999. For fiscal years 1995[1] through 1998, Lambert was rated as "met objectives/expectations" which is a mid-range evaluation.

In early 1998, Bill Wotczak, the Lead Plant Manager contacted Lambert directly regarding nominating her for an Advanced Leadership Program ("ALP"). The ALP is a program developed by USPS headquarters to train managers to replace those managers at higher level positions who would be retiring or leaving the organization. When Lambert responded that she was interested, Wotczak told her that Thon would prepare the paper work for her. Thon prepared a competency-based needs assessment for Lambert. In the assessment Thon rated Lambert as meeting expectations or outstanding in every category. Thon was expected to act as Lambert's sponsor and mentor during the ALP program.

In October 1998, Lambert accepted a "detail" in St. Louis, Missouri. During a detail the employee maintains the same salary and benefits but is stationed at a different workstation doing different types of work for the USPS. Lambert returned to SP&DC in January 1999. Soon after Lambert returned, she learned that Thon created a new temporary position called the lead MDO; Thon chose Timothy Vierling for the position.

[1] Thon did not evaluate Lambert for the 1995 fiscal year.

Lambert asserts that Thon always preferred male MDOs when she needed a replacement. Further, Lambert asserts that Vierling discriminated against her based on her sex. Lambert states that Vierling would single Lambert out during MDO meetings. For example, Vierling would refer to the other MDOs as "guys" and then tell her that she counted as a "guy" too. At one point, Vierling swore and then singled out Lambert to ask if she was offended.

Thon conducted a midyear evaluation of Lambert on April 7, 1999. The numbers for the plant showed that the plant as a whole was not going to meet expectations. Thon gave Lambert a midyear rating of "unacceptable." Lambert admits that both her numbers and the numbers of the SP&DC were not meeting expectations. (See Lambert Dep. At 340-343, 384).

By mid-April, Vierling had been Lead MDO for approximately one month. According to the USPS Defendants, Thon and Vierling decided the operation would benefit from a temporary change in personnel. They decided to ask Terry Hjelmgren at the Bulk Mail Center ("BMC") to do a detail at SP&DC because he had a reputation for having creative ideas, improving mail processing and distribution and had good communication skills. Thon and Vierling arranged for Lambert to do a tour at the BMC in exchange for Hjelmgren's detail at the SP&DC. Vierling informed Lambert of the proposed detail on April 21, 1999. Lambert objected to the transfer as an act of discrimination. Lambert claims that the BMC assignment was a downgrade in that it was an EAS level-20 post as opposed to her level as

a EAS- 22 post at the SP&DC. Lambert also claimed that she could not work the Tour 1 shift due to a stomach acid reflux problem. Vierling asked for medical documentation to support her claim; Lambert did not submit the documentation.

Because she was dissatisfied with the proposed detail, Lambert pursued the possibility of obtaining a detail in the customer service area in Minneapolis. To that end, Lambert contacted the Minneapolis Postmaster Eastman. Lambert claims that Eastman asked around about "what's going on with Joyce" which angered Thon and others. Lambert claims that Thon informed Eastman that Lambert would not be available for a customer service detail because she had other duties.

On May 4, 1999 Lambert met with Thon who told her there would be no customer service detail. Thon told Lambert that she should welcome the BMC detail as an opportunity. At the end of the meeting Lambert agreed to go on the detail. According to Lambert's declaration, the BMC would be published as an ALP assignment. Thon approved two weeks of annual leave for Lambert and told Lambert to report to the BMC on May 31, 1999. According to Eastman, she looked into possible customer service details for Lambert, but abandoned her efforts on May 5, 1999 when Lambert told her that she intended to take the BMC detail. (Eastman Dep. at 3 of 5).

Lambert never reported to the BMC. She called in sick shortly before her reporting date. She did not report to work for the next eleven months. She applied for and received

sick leave from June 1 to January 22, 2000. She also sought FMLA status for the twelve weeks from mid-June to mid-September 1999.

On May 18, 1999, Lambert sought EEO counseling. She complained that the proposed detail discriminated against her on the basis of sex and was an act of retaliation. She also claimed that there was a hostile work environment at the SP&DC. After EEO counseling, Lambert filed a formal discrimination complaint on July 30, 1999. The Postal Service agreed to investigate Lambert's claim regarding the BMC detail but would not investigate the hostile work environment claim.

On September 8, 1999, Thon wrote to a letter to Lambert requesting that Lambert provide updated medical information to support her continued absence from work. Lambert submitted a note from her nurse practitioner indicating that Lambert could not return to work at that time. Lambert subsequently submitted a letter from her treating psychologist that stated: "Ms. Lambert is able to return to work with the following limitations: #1 A postal location with an entirely different environmental stimulus (i.e. people, building, location). # 2 Job duties and responsibilities that fit her training and experience." (Sealed Ex. C).

On September 8, 1999, Thon sent a request for information requesting medical documentation. On September 30, 1999, Lambert's physician sent a letter diagnosing her with Major Depressive Disorder...parallel Post Traumatic Stress Disorder. On October 12, 1999, Lambert's nurse practitioner stated that Lambert could not return to a supervisory position. (Sealed Ex. D). Lambert states that by these and other letters she requested

reasonable accommodations by being placed in a postal location with an entirely different environmental stimulus.

On October 22, 1999, Thon recommended that Lambert receive an "unacceptable" for the year end evaluation. According to Lambert, USPS procedures state that an evaluating manager "must request from each EAS employee a completed narrative of work accomplishments." These employee narratives were to be considered by Thon in evaluating the MDOs. In 1999, Thon requested narratives from all MDOs except Lambert. Lambert states that when she finished her performance review, Thon knew that she had filed an EEO complaint in July 1999.

On October 20, 1999, Thon requested that Lambert undergo a fitness for duty exam (FFDE). Thon claims this was due to the uncertainty regarding whether and when Lambert could return to work given her medical condition. Lambert claims she ordered the FFDE in retaliation for Lambert's taking FMLA leave. Dr. Jetzer conducted the FFDE. Dr. Jetzer determined that Lambert should be seen by a psychiatrist. Lambert then had a second FFDE by Dr. Rauenhorst, a psychiatrist. Dr. Rauenhorst determined that Lambert could return to work. Dr. Rauenhorst, however, agreed with the initial restrictions placed by Lambert's treating physician.

On December 14, 1999, Thon wrote Lambert a letter demanding that Lambert return to work on the BMC detail effective December 19, 1999. Thon assigned Lambert to Tour 3 at the BMC because of her acid reflux concerns she had previously noted. According to

the USPS Defendants and Thon, the tour was at the same level of EAS-22 that Lambert had at her other position.

Lambert did not report. Thon states that due to the confusion over Lambert's medical restrictions, she sought clarification from Dr. Rauenhorst. Dr. Rauenhorst responded that Lambert could work in mail distribution facilities such as BMC. Thon then consulted with Dr. Jetzer, labor relations, and human resources and sent another letter to Lambert dated January 7, 2000 demanding that she report to the BMC. Lambert rejected it again and did not report to work. Lambert was then placed on "AWOL" status.

On January 14, 2000, Lambert sought EEO counseling for the second time. In her second complaint, Lambert asserted that the Postal Service had failed to accommodate her work restrictions in accordance with the Rehabilitation Act. She also claimed she was being subjected to retaliation based on her prior EEO claim. The USPS treated the second EEO claim as a formal request for accommodation. They sent the request to Joan Marshall, Manager of Human Resources for the Northland District. Marshall requested medical documentation from Lambert and asked that she be seen by a third outside expert, Judith Kashtan, M.D., a board certified psychiatrist. Lambert did not attend that examination.

In addition to medical opinions, Marshall sought advice from various sources within the Postal Service concerning which jobs Lambert might be qualified. She received advice from Dr. Tonowski, an in-house expert in employment qualifications, and from Postmaster Eastman. Based on that information, Marshall offered Lambert three options: (1) return to

her permanent assignment as an MDO, Tour 3, at the SP&DC; (2) report to a detail assignment of six months at BMC or, (3) accept EAS-16 position as a supervisor under Postmaster Eastman. Lambert accepted the third option. Lambert states that on May 20, 2000, "the day the demotion took effect" several other suitable jobs were available. The Postal Service issued their final agency decisions on the EEO claims and Lambert commenced this lawsuit in December 2000.

## III. STANDARD OF REVIEW

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celeotex Corp., 477 U.S. at 322. The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co.v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## IV. DISCUSSION

*A. Title VII Differential Treatment Claim*

In order to establish a prima facie case of sex discrimination under Title VII, the plaintiff must show that she: (1) was a member of a protected group; (2) was qualified for her position and satisfied its normal requirements; (3) suffered an adverse employment action; (4) was treated differently from similarly situated employees, and; (5) this different treatment occurred under circumstances which would allow the court to infer unlawful discrimination based upon plaintiff's membership in a protected group. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).

The USPS defendants claim that summary judgment is appropriate because Lambert did not experience an adverse employment action. In particular, USPS argues that the BMC detail and the unfavorable evaluations did not constitute adverse employment actions. USPS defendants argue that the transfer to the BMC did not produce a "material employment disadvantage" because it was a lateral transfer. See Kerns v. Capitol Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999); Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997). The USPS defendants further allege that the detail assignment was not a demotion, but rather "a temporary assignment for an employee to gain various experiences for upward mobility and self-improvement." For support, the USPS points out that the assignment was temporary, was located ten miles from her current work location and that Lambert would

retain all her salary and benefits. In fact, USPS argues, Lambert would have received a pay increase do to the night time hours she was assigned to work.

The law is clear that, "[n]ot everything that makes an employee unhappy constitutes an adverse employment action." Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997). Reassignments of employees, although they do not alter the salary or benefits of the employee, may, nonetheless, constitute an adverse employment action. Myers v. Nebraska, 324 F.3d 655, 660 (8th Cir. 2003). In Myers the court found that a "dramatic shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action . . . ." Id. The plaintiff in Myers was an ongoing case worker for children within the Nebraska Health and Human Service Department. Id. at 657. After expressing an opinion about the placement of children under the Department's care that conflicted with that of her co-workers and supervisor, Myers was then reassigned to an intake worker position, a job that required considerably less skill and experience than that of an ongoing case worker. Id. at 658. Myers new assignment as an intake worker shared no similarities with that of her original position as a ongoing case worker.

In the case at hand, however, the transfer to the BMC does not constitute an adverse employment action. When Lambert was transferred to the BMC she retained not only her salary, which would have been increased for the time differential, and benefits, but also her role as an MDO. As an MDO at the BMC, Lambert would still have supervisory duties that parallel those of MDO's at other USPS facilities. Myers does not transform an employer

decision to make reasonable changes to the contours of an employee's responsibilities into an adverse employment action, actionable under Title VII; Myers holds that "significant" and "dramatic" changes in employee responsibilities may constitute an adverse employment action. The Court finds that the transfer to the BMC did not constitute a significant nor dramatic change in Lambert's job responsibilities and therefore were not an adverse employment action.

Lambert also argues that the BMC was an adverse employment action because it interfered with her ability to complete the Advanced Leadership Program. This argument is undercut by Lambert's own declaration which acknowledges that the BMC transfer would be published as part of the Advanced Leadership Program. That is to say the BMC experience would be recognized as a Advanced Leadership Program assignment. The transfer to the BMC was not an adverse employment action sustainable under Title VII.

Next, the USPS defendants argue that the negative evaluations did not constitute an adverse employment action. "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Spears v. Missouri Dep't of Corr., 210 F.3d 850, 854 (8th Cir. 2000). Lambert asserts that the negative evaluation served as a basis for denying her a yearly raise. For support, Lambert provided the FY '96 EAS Merit Pay Program Administrative Rules and Processing Guidelines; that document contains a FY '96 EAS Merit Pay Program Award Matrix. According to that Matrix, an employee who gets an

unacceptable rating does not receive a pay increase. An employer's decision not to provide an employee a pay raise may be an adverse employment action. See Denesha v. Farmers Ins. Exch., 161 F.3d 491(8th Cir. 1998). Therefore, Lambert has shown that the negative evaluation detrimentally altered the terms and conditions of her employment.

The USPS defendant argue, however, that even if the evaluation were an adverse employment action, it had a legitimate business reason for giving the unfavorable evaluation. The USPS asserts that the unfavorable rating was an accurate reflection of Lambert's performance, especially in light of the fact that she was not at work for the last five months of that fiscal year.

The Court finds that Lambert has provided sufficient evidence that a jury might conclude that the evaluation was a result of a discriminatory animus. The Supreme Court has relieved plaintiffs from proving that the employer's proffered reason for the adverse employment action was a pretext for discrimination. Desert Palace v. Costa, 123 S.Ct. 2148, 2155 (2003). Lambert need only show that the protected character was among the factors used in taking the adverse employment action. Id. Lambert has provided that evidence. For example, Thon's testimony confirms that it was the ordinary practice for the employee to provide the evaluator with a narrative of accomplishments to be considered in the evaluation process. This did not occur in Lambert's case. There is a question of fact as to whether this omission occurred because Lambert was unavailable, as stated in Thon's deposition testimony, or if the omission was a result of a discriminatory animus. Accordingly, the USPS

defendants motion for summary judgment on the differential treatment claim is **DENIED**.

*B. Sexual Harassment Claim*

The USPS defendants aver that summary judgment is appropriate for the sexual harassment claims because (1) Lambert failed to exhaust her administrative remedies and (2) because the alleged actions were not so severe or pervasive such that they constituted a hostile work environment.

*i. Exhaustion of Remedies*

Exhaustion of administrative remedies is a jurisdictional prerequisite for a civil action under Title VII. Mohr v. Dustrol, 306 F.3d 636, 643 (8th Cir. 2002). This means that an employee must fully exhaust administrative remedies before bringing a claim in federal court. Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir. 2003). Failure to exhaust administrative remedies will result in a dismissal of a subsequent claim brought in federal court. Peanick v. Morris, 96 F.3d 316, 321 (8th Cir. 1996).

To comply with this requirement under Title VII, Lambert, as a federal employee, must initiate contact with the EEO within forty-five (45) days of the alleged discriminatory act within or within forty-five (45) days of the effective date alleged discriminatory personnel action. 29 C.F.R. § 1614.105(a)(1); Jensen v. Henderson, 315 F.3d 854, 858 (8th Cir. 2002). The forty-five (45) day deadline serves as a statute of limitations and bars a subsequent lawsuit absent a showing of waiver, estoppel or tolling. See Peanick v. Morris, 96 F.3d 316,

321 (8th Cir. 1996). Once the plaintiff is notified of the adverse action the forty-five day limitation begins to accrue. Id.

The USPS Defendants assert that, although Lambert's complaint deals with claims occurring in the 1995-1998 time frame, she did not contact an EEO Counselor until May 18, 1999. The USPS Defendants argue that the only incident within that time frame was her transfer to the temporary detail at the BMC on April 21, 1999. As such, they argue, all other claims are time-barred.

The issue, however, is whether alleged acts of discrimination, which would otherwise be time barred, can be used to support a claim that is timely. Pivotal to this issue is the U.S. Supreme Court's decision in Nat'l R.R. Passenger Corp., v. Morgan, 536 U.S. 101 (2002). The Supreme Court in Morgan held that "[i]n order for the [hostile work environment] charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. at 118. "In essence, the [Morgan] Court has simplified the law by allowing courts to view allegations of hostile work environment as 'a single unlawful employment practice.'" Jensen v. Henderson, 315 F.3d 845, 859 (8th Cir. 2002).

Lambert has alleged discriminatory acts that are both timely and untimely. The Morgan decision, however, permits this Court to consider, for the purposes of assessing liability, the "entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period . . . ." Morgan 536 U.S. at 105. Accordingly, Lambert is

permitted to marshal the alleged discriminatory conduct, including those acts outside the statutory time period, to support her timely claim.

*ii. Merits of the Sexual Harassment Claims*

Procedural concerns aside, the Court now examines the record for facts that would permit a reasonable trier of fact to conclude that Lambert suffered discrimination. To establish a claim for sexual harassment an employee must show, (1) membership in a protected group, (2) the occurrence of unwelcome harassment, (3) a casual nexus between the harassment and the membership in the protected group, (4) such harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). An employer cannot be held liable for harassment unless it "knew or should have known about the harassment and failed to take prompt remedial action reasonably calculated to stop the harassment." Id. at 700. "Conduct that is not severe or pervasive enough to create an objectively hostile work environment . . . is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 510 US. 17, 21 (1993). In other words, Title VII is not "a general civility code for the American workplace." Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983 (8th Cir. 1999).

A hostile work environment is one where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'" Harris, 510 U.S. at 21. The following factors are relevant to determining whether a hostile work environment exists: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it interferes with an employee's work performance. Harris, 510 U.S. at 23.

Lambert supports her claim that she was "subjected to work in an environment hostile to women," with the facts in her EEO affidavit. The twenty two pages of that EEO affidavit provide sufficient evidence wherein a jury could find a hostile work environment. For instance, Lambert's affidavit recounts threats of termination that were accompanied by statements such as "I don't care if you go to the EEO." This statement could be taken as a tacit acknowledgment that discriminatory animus was reasonably perceived from the circumstances. Lambert also recounts that her authority and judgment was supplanted by male MDOs who would reverse her decisions. Lambert also contends that she was subject to unfair scheduling . Taken together, these actions, and many others cataloged in the EEO affidavit, are sufficient to defeat summary judgment. Accordingly, the USPS Defendants' motion for summary judgment on the sexual harassment claim is **DENIED**.

*C. Title VII Retaliation Claim*

To establish a prima facie case of retaliation, Lambert must show: (1) that she engaged in an activity protected under Title VII; (2) that the defendant took an adverse employment action against her and (3) that a causal connection existed between the exercise of protected

activity and the adverse action against her. See Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997).

Lambert alleges "[t]he defendants began a course of retaliation when it found out that Lambert (1) objected to Vierling about the BMC transfer, stating it was discriminatory and (2) filed two EEO complaints." Lambert avers that the alleged acts of discrimination outlined in the disparate treatment claim also composed acts of retaliation. Many of those facts do not support a retaliation claim because they are either not an adverse employment action and/or fail to show the requisite causal connection between the adverse employment action and the protected activity. For example, among those facts alleged as retaliation is the transfer to the BMC. A claim of retaliation based on the BMC transfer is improper because an employer's action cannot trigger an employee to engage in a protected activity while at the same time be viewed as an act of retaliation. In other words, the BMC transfer was either the impetus for engaging in the protected activity or punishment for engaging in the protected activity, but could not have been both.

Lambert, however, has alleged one adverse employment action taken by the defendant wherein a jury could find that the defendants acted in retaliation, that being the unfavorable evaluation. The Court has already concluded that the unfavorable evaluation was an adverse employment action because it was used in the denial of Lambert's pay increase. A jury could find that the decision to provide Lambert with an unfavorable evaluation was payback for the EEO complaints. The adverse employment action occurred after Lambert engaged in the

protected activity and the circumstances permit a reasonable inference of retaliation. For instance, the USPS defendants argue that "[c]ommon sense dictates that having an unacceptable mid-year evaluation followed by being absent for nearly half of the evaluation period would result in an unacceptable final evaluation." The Court, however, notes that the USPS defendants could have chosen to give Lambert the Not-Rated status which signifies, "[e]xperience with individual's performance was insufficient to determine an appropriate performance category or other relevant contingency." A jury may conclude that this adverse action was done in retaliation and accordingly the defendants motion for summary judgment on the retaliation claim is **DENIED**.

*D. Rehabilitation Act Claims*

The USPS Defendants argue that summary judgment is due on this claim because Lambert has not shown she is disabled. The Court agrees.

To succeed on a claim under the Rehabilitation Act the plaintiff must show: (1) she is an individual with a disability; (2) she is "otherwise qualified;" (3) her employer is a federal agency or that the program sponsoring the position received federal financial assistance; and (4) she has been adversely treated in whole or in part because of her disability. Weber v. Strippit Inc., 186 F.3d 907, 912 (8th Cir. 1999).

One is disabled within the meaning of the Rehabilitation Act if one (i) has a physical or mental impairment that substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

28 U.S.C. §705 (20)(B). Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Weber v. Strippit, Inc., 186 F.3d at 914. The following factors are relevant: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact or the expected long term impact of or resulting from the impairment. Id. at 913; 29 C.F.R. § 1630.2(j)(2). In order to be substantially limited in the activity of working the USPS Defendants argue that Lambert must show that she was unable "to perform either a class of jobs or a broad range of jobs in various classes." Heintzelman v. Runyon, 120 F.3d 143, 145 (8th Cir. 1997).

Lambert is not disabled within the meaning of the Rehabilitation Act because her medical limitations only restricted her from working under the supervision of specified individuals at certain locations. This narrow limitation does not stifle any of Lambert's major life activities such that she can not work where the average person can, but limits who she can work under. Personnel limitations do not support a finding of disability under the Act. See Barzen v. Carlson Companies, Inc., 175 F.3d 1023 (8th Cir. 1999)(plaintiff's inability to work under a certain supervisor does not substantially limit a major life activity). Accordingly, the Defendants' motion for summary judgment on the Rehabilitation Claim is **GRANTED**.

*E. FMLA Retaliation Claim*

The FMLA prohibits employers from discriminating against employees for asserting rights under the FMLA 29 U.S.C. § 2615. A plaintiff has established a prima facie case of FMLA when she shows that: (1) she engaged in activity protected under the FMLA; (2) she suffered an adverse employment action by an employer; (3) there is a causal connection between the employee's activity and the adverse employment action. Darby v. Floyd Bratch, 287 F.3d 673, 679 (8th Cir. 2002).

The USPS Defendants argue that taking FMLA is not a predicate activity in which an FMLA retaliation claim can be based. For support, the USPS Defendants point to Graham v. State Farm Mutual Ins. Co., 193 F.3d 1274, 1274 and 1284 (11th Cir. 1999). There, the Eleventh Circuit held that where an employee takes her FMLA leave and is paid for it, she can show no injury. The Eighth Circuit, however, has taken a different position and held that taking FMLA leave is sufficient to state a FMLA retaliation claim if the plaintiff can demonstrate the other prima facie elements. Darby, 287 F.3d 673, 679 (8th Cir. 2002). This Court is bound by the Eighth Circuit case law. Accordingly, the Court finds that taking FMLA leave is a sufficient predicate act for a FMLA retaliation claim.

Next, the USPS Defendants argue that Lambert cannot establish a prima facie case because she did not suffer an adverse employment action. The FMLA retaliation count of Lambert's Amended Complaint states that the USPS Defendants "retaliated against her and

assigned her to work a shift [at the BMC] that these Defendants believed would 'kill' her . . . [also] by refusing to allow [Lambert] to work with her doctor's restrictions and placing her on AWOL status."

Consistent with this Court's finding that the transfer to the BMC was not an adverse employment action, there is no cognizable claim for FMLA retaliation based on the BMC transfer. Also consistent with this Court's finding that Lambert is not disabled under the Rehabilitation Act, there is no cognizable claim for FMLA retaliation for failure to accommodate her doctor's restrictions. Accordingly, the only other act specifically alleged to be retaliatory is the USPS Defendants' decision to place Lambert on AWOL status. Lambert has failed to connect her AWOL status to any material change in her employment. Placing Lambert on AWOL status is the logical equivalent of papering an employee's file, neither has any legal significance until and unless they are used to materially alter the terms and conditions of employment. The Court has found, however, that the unfavorable rating is an adverse employment action because it served as a basis for denying Lambert a raise. Lambert has failed, however, to provide any evidence that Thon's recommendation for the unfavorable evaluation was connected to her FMLA leave. At best, Lambert relies on the timing of her taking the leave and Thon's unfavorable evaluation. The temporal proximity argument, in isolation of any other evidence, is not enough. Kiel v. Select Artificial, Inc., 169 F.3d 1131, 1132 (8th Cir. 1999) (stating, "[generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a

genuine factual issue on retaliation"). And even if temporal proximity were enough, the time span between Lambert initially taking FMLA leave and when Thon recommended Lambert for the unfavorable evaluation, a span of months, is far too long to survive summary judgment. Smith v. Allen SYS. Inc., 302 F.3d 827, 833 (8th Cir. 2002) (holding that two-week period between taking FMLA leave and being fired was "barely" enough temporal proximity to establish a prima facie case of causation, and noting that two months was too long a period of time). Accordingly, the USPS Defendants' motion for summary judgment on the FMLA retaliation claim is **GRANTED**.

Lambert also seeks to hold Thon, individually, liable for retaliation under the FMLA. Thon argues that she is entitled to both sovereign immunity and qualified immunity. Thon also argues, in the alternative, that Lambert's FMLA retaliation claim fails on the merits.

Both parties have cited to Darby v. Batch, 287 F.3d 673 (8th Cir. 2002). Both parties agree that Darby held that public employees were not entitled to sovereign immunity for retaliation claims under the FMLA. Id. at 681 (stating "[these regulations also suggest that individual liability arises under the FMLA. . . . [we see no reason to distinguish between employers in the public sector from those in the private sector"). Thon, however, asks this Court to ignore apposite and clear-cut Eighth Circuit case law in favor of case law from the Eleventh Circuit; this Court is bound by the Eighth Circuit's case law. Accordingly, the Court finds that Thon is not entitled to sovereign immunity.

Next Thon argues that she is entitled to qualified immunity. The Darby case is also

dispositive of this claim. The Darby court stated, "[the individuals in this case also assert the defense of qualified immunity. That argument is without merit. The Family Medical Leave Act creates clearly established statutory rights, including the right to be free of discrimination or retaliation on account of one's exercise of leave rights granted by the statute." Accordingly, Thon does not enjoy qualified immunity.

Consistent, however, with this Court's findings relating to Lambert's FMLA retaliation claim against the USPS defendants, the Court finds that Lambert's FMLA retaliation claim against Thon is not supported by evidence whereby a reasonable jury could conclude in Lambert's favor. Accordingly, Thon's motion for summary judgment is **GRANTED**.

## V. MISCELLANEOUS MOTIONS

### *A. Punitive Damages*

Lambert states that she "does not contest the issue with respect to punitive damages." (Pl. Mem. in Opp'n at 33.) Accordingly, the Court **GRANTS** the USPS Defendants' motion to dismiss any claim for punitive damages with respect to all claims.

### *B. FMLA Emotional Distress Damages*

Likewise, Lambert asserts that she "did not plead emotional anguish damages in her FMLA Count." (Pl. Mem. in Opp'n at 33.) Accordingly, the USPS Defendants' motion to strike emotional anguish damages is **GRANTED**.

*C. Jury Trial for FMLA and Rehabilitation Act Claims*

Because the Court has granted summary judgment on both the FMLA claim and the Rehabilitation Act claims, the Defendants' Motion to Strike a Jury Demand is **DENIED** as moot.

*D. Motion to Strike*

Lambert has brought a motion to strike the declaration of Judith Thon. That motion is **DENIED**.

**IT IS HEREBY ORDERED that:**

1. The USPS Defendants' Motion for Summary Judgment [Docket No. 56] is **GRANTED** in part and **DENIED** in part. Specifically,

    a. USPS Defendants' Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint is **DENIED**.

    b. USPS Defendants' Motion for Summary Judgment on Count II of the Plaintiff's Amended Complaint is **DENIED**.

    c. USPS Defendants' Motion for Summary Judgment on Count III of the Plaintiff's Amended Complaint is **DENIED**.

    d. USPS Defendants' Motion for Summary Judgment on Count IV of the Plaintiff's Amended Complaint is **GRANTED**.

    e. USPS Defendants' Motion for Summary Judgment on Count V of the Plaintiff's Amended Complaint is **GRANTED**.

2. Defendant Thon's Motion to Dismiss [Docket No. 59- Part 1] is **DENIED.**

3. Defendant Thon's Motion for Summary Judgment [Docket No. 59-Part 2] is **GRANTED**.

4. Plaintiff's Motion to Strike [Docket No. 72] is **DENIED**.

5. USPS Defendants' motion to dismiss any claim for punitive damages is **GRANTED** with respect to all claims.

6. USPS Defendant's motion to strike a jury demand in the FMLA claims and the Rehabilitation Act claims are **DENIED** as moot.

7. USPS Defendants' motion to strike emotional anguish damages is **GRANTED** with respect to the FMLA claims.

2-2-04
Date

Judge Michael J. Davis
United States District Court