UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2580 MJD/JSM

| | | |
|---|---|---|
| JOYCE E. LAMBERT, Plaintiff, | ) | |
| v. | ) | **DEFENDANT POTTER'S TRIAL BRIEF** |
| JOHN E. POTTER, IN HIS OFFICIAL CAPACITY AS POSTMASTER GENERAL OF THE UNITED STATES, Defendant. | ) | |

## INTRODUCTION

As a result of the Court's order filed February 3, 2004, this employment discrimination case has been narrowed to but three simple issues: *First*, Did the United States Postal Service intentionally treat Plaintiff Joyce Lambert ("Lambert") differently on the basis of her sex than similarly situated males when it gave her an "Unacceptable" year end evaluation in November 1999? *Second*, did the Postal Service give Lambert an "Unacceptable" 1999 year end evaluation in retaliation for her filing an EEO charge in May 1999? *Third*, was Lambert a victim of a sexually hostile work environment?

Perhaps more importantly, the Court has ruled that *all* of Lambert's other claims are *not* actionable including, but not limited to, the proposed detail to the BMC; alleged interference with her ALP program; alleged interference with her attempts to get a detail to customer service in May 1999; FMLA retaliation; the

alleged failure to accommodate and the other claims under the Rehabilitation Act; the AWOL claim; and the demotion ("constructive demotion") claim; among others.

**DISCUSSION**

1. Plaintiff's New "Constructive Demotion" Claim. Despite the Court's clear ruling to the contrary, based on her proposed instructions, Lambert will attempt to insert a claim that her voluntary downgrade to EAS-16 in May 2000 was discriminatory in that it constituted a "constructive demotion." The Court should deny any such claim. First, while Lambert alleged the facts leading to the event of her transferring to customer service in May 2000, Lambert did not raise "constructive demotion" as a separate claim in her amended complaint. Had she intended to make such a separate claim, she would have made it a separate count.

Second, to the extent it was alleged, the Court dismissed the claim. The Court ruled that the *only* basis for the disparate treatment and retaliation claims is the 1999 year end evaluation, and the Court dismissed the Rehabilitation Act and the FMLA retaliation claims in their entirety; therefore, this "constructive demotion" claim has been dismissed.

Third, Lambert failed to exhaust her administrative remedies on this constructive demotion claim; therefore the Court lacks subject matter jurisdiction over this claim. Here, unlike for her other claims, Lambert did not initiate contact with an equal

employment counselor, file a formal EEO complaint, much less exhaust administrative remedies, in regard to her issue of being downgraded, constructive or otherwise. She appealed to the MSPB, but the MSPB denied the appeal. After the MSPB Administrative Judge's decision, Lambert was given appeal rights to the full MSPB and/or Federal Court of Appeals. She failed to exercise either option. Even if she could appeal to the district court, she did not do so timely as her complaint was not filed until December 2000 and the MSPB ruled on September 20, 2000. Thus, this Court lacks subject matter jurisdiction over her claims regarding downgrade, or "constructive demotion."

It is beyond peradventure that the offer and acceptance of the EAS-16 position was a discrete event. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 113 (2002). The Supreme Court also stated that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. See also High v. University of Minnesota, 236 F.3d 909 (8th Cir. 2000). Lambert may argue the downgrade relates to issues

raised in her previous administrative complaints. However, under Morgan, a claimant must initiate administrative proceedings timely and must exhaust those remedies for each discrete, alleged discriminatory act.

Because the downgrade was a discrete "act" or "practice," Lambert was obliged to seek EEO counseling within 45 days of that event to preserve any such claim. She did not do so. Where a plaintiff alleges constructive discharge, that plaintiff must seek counseling within 45 days or her claim is barred. Here, the same analysis applies.

Moreover, the downgrade was purely voluntary. Lambert appealed the issue of the downgrade to the Merit Systems Protection Board (MSPB) arguing that it was involuntary. Specifically, Lambert argued: (1) the agency coerced her into accepting the EAS-16 position based on a threat it would fire her; (2) the agency misled the appellant by not advising her she could save her EAS-22 pay in the EAS-16 position; (3) the agency improperly failed to offer the appellant reassignment to other positions, including positions at a higher level than EAS-16; and (4) the agency's action was in retaliation for the appellant's EEO complaints. The MSPB Administrative Judge thoroughly analyzed these claims and concluded that the downgrade was a result of the Plaintiff's own voluntary action. Lambert Depo. Ex. 80. This Court should adopt this reasoning.

The Administrative Judge found the medical evidence and argument offered by Lambert on appeal did not reflect she was generally foreclosed by her impairment from the type of employment involved, only that she was placed under stress when she worked under or with certain individuals in certain locations. Under these circumstances, she had not presented a non-frivolous argument that her ability to work was substantially limited. See Fitzgerald v. Department of Defense, 85 M.S.P.R. 463, 468 (2000). Lambert's contention the agency was required to reassign her to accommodate her disability is without merit, and the agency's offer of two other positions was gratuitous, not coercive.

The Court further found that Lambert had not proffered non-frivolous evidence showing involuntariness. The ALJ found that, contrary to Lambert's argument, the USPS merely intended to initiate disciplinary action if Lambert did not chose one of the options offered. Lambert did not produce evidence demonstrating such a threatened action could not be supported because AWOL for three months is a removable offense. Lambert was provided a choice and ample time to consider it in consultation with her attorney. Finally, there was no evidence the USPS made false or misleading statements. This Court should dismiss any claim involving the voluntary downgrade.

2. Disparate Treatment. For Lambert to prevail on her claim that the 1999 year end evaluation was discriminatory, she must

first establish her prima facie case: (1) she is a member of a protected group; (2) she was meeting the defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) circumstances exist giving rise to an inference of discrimination. Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994). Here, while Lambert as a female may satisfy the first element, she cannot satisfy the other three. The evidence will show, as the Court has found, that, as of April 7 the day of Lambert's midyear evaluation, the St. Paul P&DC was not meeting expectations and that Lambert has admitted that neither her numbers nor the plant's numbers were meeting expectations. Order at 3. Lambert worked just one more month and at least one week was not at her MDO job at the plant. She did not report from May 10 through the end of the rating year; consequently, she was not in the position to improve. So, the evidence will establish she was not meeting the expectations of her employer. The unacceptable evaluation should not qualify as an adverse employment action. It did not *reduce* her salary, produce a material employment disadvantage, or significantly affect her future prospects. Despite the unacceptable rating, Lambert still received her EVA bonus for FY99. The discretionary merit *pay raise* for which she did not qualify was just that, discretionary. Therefore, the evaluation should not qualify as an adverse employment action. Finally, there is no evidence of discrimination or pretext. USPS

policy *required* that Lambert be rated. Lambert was not situated similarly to the four other MDOs, because she did not work in the St. Paul P&DC for the last four months of the fiscal year. Indeed, Charles Schlicting, a male, who missed a significant amount of time due to illness also received an unacceptable rating. Lambert was not treated differently.

3. Retaliation claim. To establish retaliation, Lambert must prove she participated in protected EEO activity, she suffered an adverse employment action, and there was a causal connection between the adverse employment action and the protected activity. Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997). Here, as stated above, the evaluation should not constitute an adverse action, but even if it were, Lambert cannot establish causation. Here, Lambert initiated her EEO claim on May 18, 1999, but Thon did not submit the evaluation until October 22, and it was not approved until November 29, 1999; therefore, there is absolutely no temporal connection between the two events. More importantly, USPS policy required that Lambert be rated. USPS policy puts the onus on the *employee*, not the *employer* to submit the narrative of work accomplishments. Lambert did not submit narratives in other earlier years, but nevertheless received an acceptable rating.

4. The hostile work environment claim. Lambert's hostile work environment claim should fail for at least the following reasons.

First, the type of conduct of which she complains was innocuous. She alleges she was subjected to withholding of information pertinent to her job, but she does not describe the information withheld, by whom, or when. She claims she was excluded from work activities, but the activities she identified were weekends at a cabin up north among fellow workers which were not work-sponsored or work-related. She alleged she was excluded from MDO meetings, but she did not identify any such occurrence. She alleged she was subjected to unfair scheduling on holidays when she first arrived in 1995, but offered scant proof that this occurred. She alleged her decisions were overridden, but provides but one example of this in the 1995 time frame. Finally, she alleged she was berated and belittled, but again the example provided occurred in 1995-96 and was not done by Thon or even Vierling. In fact, Thon is not implicated in any incident alleged in the amended complaint. With the exception of the BMC detail issue and several stray innocuous remarks by Vierling, all this conduct occurred in 1995 or early 1996, before Thon arrived.

Second, if the conduct were unwelcome, Lambert never complained until April 1999.

Third, there is no indication that any of this conduct had anything to do with Lambert whatsoever, let alone her sex.

Fourth, this conduct was not severe, let alone pervasive. As stated, this conduct if it occurred, was not the sort of conduct that typically gives rise to a hostile work environment claim let alone that would establish its existence. While the conduct need not be "sexual," it must nevertheless be severe. The alleged conduct was infrequent, not threatening or humiliating or even objectively offensive, and did not affect or interfere with Lambert's work.

Fifth, Lambert did not complain about the conduct allegedly directed at her. Nor did she complain about any of the other conduct directed at other employees. So, the USPS cannot be charged with knowledge of her complaints or any failure to take corrective action to end conduct about which it had no knowledge.

Finally, Lambert never complained or pursued an EEO claim prior to April or May 1999. Given her knowledge of the EEO process and requirements, it was unreasonable for her not to report or complain about these events.

5. Exclusion of evidence. The Court should exclude the evidence relating to the dismissed claims, the conduct concerning other employees, other EEO complaints, the Sandberg deposition and other matters, as well as the other evidence as set forth in Defendant's motion in limine. This evidence is not relevant and it

would be severely prejudicial to the USPS were this evidence admitted.

6. Damages. Again, given the narrow issues left, the potential damages likewise are limited.

First, on the disparate treatment and retaliation claims arising out of the 1999 evaluation, the actual damages are severely limited. The only benefit affected by the 1999 evaluation was her salary. Specifically, because of the unacceptable 1999 year end evaluation, Lambert did not qualify for a raise beginning January 1, 2000. However, she was paid only for 22 days of 2000 at that salary while she was on approved sick leave. Thereafter, she was not paid because she did not request annual or other leave after January 22, and she did not work until she appeared for her new customer service position in May 2000. Thus, the loss attributable to the 1999 evaluation must necessarily be limited to the first 22 days of 2000. The specific amount of damages is only about $115.28 (exclusive of taxes). This is based on the daily portion of the annual raise of $1914 that she presumably would have received had she received a "Met Expectations" rating multiplied by 22 days. Since she did not work from January 23 onward, and was not on approved leave, she was not paid at all. But, this had nothing to do with the 1999 evaluation. In short, the 1999 evaluation caused a loss of $115.28 through January 22, 2000 and no loss from January 23, 2000 onward.

Second, Lambert is not entitled to front pay based on any constructive demotion theory. Any such claim was dismissed already or the Court does not have jurisdiction over it. She took the downgrade voluntarily.

Finally, to avoid jury confusion, the defendant has submitted three (3) verdict forms, one for each claim. However, in the event that the jury finds for the plaintiff on more than one claim, the Court should take care not to allow any double recovery. Specifically, Lambert would be entitled to just one award for lost wages, even though it may have been caused by two discriminatory events. Similarly, the $300,000 cap applies to this entire case, not to each claim individually. Accordingly, in the event that the jury awards compensatory damages in a total amount in excess of $300,000, the Court should reduce the award of compensatory to the cap of $300,000.

Dated: 7/19/04

THOMAS B. HEFFELFINGER
United States Attorney

s/Friedrich A.P. Siekert

BY: FRIEDRICH A. P. SIEKERT
Assistant United States Attorney
Attorney ID Number 142013
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600