UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jean Sandberg,

Plaintiff,

v.

William J. Henderson,
United States Postmaster
General,

Defendant.

Civil No. 98-1653 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Reino J. Paaso, Esq., Paaso Law Office, 310 Fourth Avenue South, Suite 500, Minneapolis, Minnesota 55415, for Plaintiff.

Patricia R. Cangemi, Assistant United States Attorney, 600 United States Courthouse, 300 Fourth Street South, Minneapolis, Minnesota 55415, for Defendants.

---

**Introduction**

The present action arises under Title VII. Plaintiff Jean Sandberg alleges that she was subjected to sexual harassment, sex discrimination, and retaliation during her employment with the United States Postal Service.

The matter is currently before the Court on the Defendant's Motion for Summary Judgment, which constitutes this lawsuit's third dispositive motion before the Court.[1]

Because the Plaintiff has failed to submit to the Court the evidence necessary to support her claims of sexual harassment or sex discrimination, those claims must be dismissed as a

---

[1] The Plaintiff opposed the Defendant's Motion as untimely under the Pretrial Scheduling Order. (Pl. Mem. in Opp. at p. 1.) On June 17, 1999, the Amended Pretrial Scheduling Order was filed, setting forth February 1, 2000, as the dispositive motions deadlines. As the present motion was filed with all accompanying documents on January 19, 2000, the Defendant's Motion is not untimely.

(120)

CULBERTH AFFIDAVIT
EXHIBIT 1

FILED FEB 01 2000
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

matter of law. However, as a reasonable jury could conclude, based upon the evidence submitted, that the Defendant retaliated against the Plaintiff because of her complaints of harassment and discrimination, the Plaintiff's retaliation claim must survive summary judgment. The Defendant's Motion for Summary Judgment is thus granted in part and denied in part.

**Background[2]**

Plaintiff Sandberg has been employed by the United States Postal Service since 1989. ("Re-Corrected Third Amended Complaint," hereinafter, "Complaint" at ¶ 5.) The Plaintiff is currently employed as a Maintenance Operation Support Clerk at the downtown St. Paul Postal Service facility. (Complaint at ¶ 5.)

The Plaintiff alleges that she has been subjected to ongoing discrimination and harassment at the Postal Service and further alleges that she has been subjected to ongoing retaliation because of her complaints regarding the alleged discrimination and harassment.

Specifically, the Plaintiff testified in her affidavit that a coworker, Lori Peterson, routinely called her derogatory names. (Affidavit of Jean Sandberg at ¶ 2.) The Plaintiff testified that she was also harassed by another coworker, Michael Marx. (Sandberg Aff. at ¶ 2.) The Plaintiff submitted approximately forty cartoons and other postings that she found in the maintenance office, some of which included sexually explicit drawings and all of which the Plaintiff found offensive. (Sandberg Aff. at ¶ 7, Ex. 2.) Many of the exhibits were posted in the office by Lori Peterson; some of the exhibits were delivered by hand to the Plaintiff or placed in her in-basket. (Sandberg Aff. at ¶ 7, Ex. 2.)

---

[2] For a more detailed discussion of the factual background of the present matter, see the Court's two previous Orders of October 20, 1999, and January 10, 2000, pursuant to the Defendant's earlier Motion to Dismiss or for Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment.

The Plaintiff testified in her affidavit that, on April 13, 1995, she reported the harassing behavior by Lori Peterson and Michael Marx to her supervisor, Mary Alt. (Sandberg Aff. at ¶ 3.) The Plaintiff alleges in the Complaint that Ms. Alt took no effective action and the verbal abuse continued. (Complaint at ¶¶ 20, 37.)

In support of her claim of sex discrimination, the Plaintiff alleges that she was denied overtime opportunities, denied access to the computer system, and denied training and promotional opportunities, which were all made available to male employees. (Complaint at ¶¶ 41-43.)

Finally, the Plaintiff alleges that the Defendant retaliated against her in response to her complaints of harassment and discrimination. The Plaintiff has set forth evidence in the record that she received a negative evaluation that caused her to be removed from consideration from a possible promotion. (Deposition of Judith A. Thon at p. 37, Exs. 2, 3.) The record also contains evidence that a supervisor concluded, based upon the Plaintiff's numerous complaints and grievances, that the Plaintiff was paranoid and ordered her to undergo a psychological examination. (Deposition of Thomas Roth-Yousey at p. 159.)

## Discussion

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enterprise Bank, 92 F.3d at 747. However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enterprise Bank, 92 F.3d at 747. The nonmoving party must then demonstrate the existence of specific facts in the record which create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986); Krenik, 47 F.3d at 957.

**B. Hostile Environment Under Title VII**

A plaintiff may establish a Title VII violation by proving that discrimination based on sex has created a hostile or abusive work environment. Rorie v. United Parcel Service, Inc., 151 F.3d 757, 761 (8th Cir. 1998), quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). To establish a sexually hostile work environment in violation of Title VII by non-supervisory coworkers, a plaintiff must establish: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).

In determining whether the work environment is hostile or abusive under Title VII, courts must examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance. Phillips v. Taco Bell Corp., 156 F.3d 884, 888 (8th Cir. 1998), quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d (1993). To be actionable, the conduct must have been sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997), quoting Harris, 510 U.S. at 21, 114 S. Ct. at 370. The plaintiff must show both that the offending conduct created an objectively hostile environment and that she subjectively perceived her working conditions as abusive. Hathaway, 132 F.3d at 1221.

In the present matter, the Complaint contains numerous allegations of harassing behavior. For example, the Complaint contains an allegation that a coworker, Michael Marx, told Plaintiff that "jism smeared all over the Plaintiff's face would cure zits," and began masturbating in front of the Plaintiff. (Complaint at ¶ 13(f).) However, a party opposing a properly supported motion for summary judgment may not rest upon mere allegations, but must set forth specific facts in the record. Anderson, 477 U.S. at 256, 106 S. Ct. at 2514; Krenik, 47 F.3d at 957. During the deposition of supervisor Mary Alt, Ms. Alt testified that the Plaintiff complained about the alleged comment. (Deposition of Mary Alt at p. 138.) However, testimony recounting what another individual allegedly told the deponent does not raise a genuine fact issue because it is hearsay. Churchill Business Credit, Inc. v. Pacific Mut. Door Co., 49 F.3d 1334, 1337 (8th Cir. 1995). The alleged comment is also recounted in the Plaintiff's handwritten notes, submitted as an exhibit. (Affidavit of Reino J. Paaso, Ex. 5.) The Plaintiff's handwritten notes are also insufficient to introduce the alleged comment in evidence. See Mason v. Clark, 920 F.2d 493, 494-95 (8th Cir. 1990) (error to consider unsigned piece of paper as evidence in summary judgment motion). Therefore, although Mr. Mark's alleged comment and accompanying action is included in the Complaint to support the Plaintiff's claim of sexual harassment, the alleged

incident may not be considered by the Court as evidence for purposes of the present summary judgment motion.

The evidentiary record contains approximately forty cartoons and postings that were displayed in the office or given to the Plaintiff. The Plaintiff also testified that a coworker, Lori Peterson, routinely called her derogatory names. (Affidavit of Jean Sandberg at ¶ 2.) Ms. Peterson also admitted to having been given a statuette of a penis; Ms. Peterson denied placing the item on her desk, however, and testified that she kept it in her desk drawer. (Deposition of Lori Peterson at p. 25.) The Plaintiff has submitted no evidence to refute Ms. Peterson's testimony. The Court thus has no evidence before it that the statuette was ever placed in plain view at the office.

The Plaintiff testified that she also experienced "harassment" by another coworker, Michael Marx. (Sandberg Aff. at ¶ 2.) However, conclusory allegations are insufficient to avoid summary judgment. Hugh Chalmers Motors, Inc. v. Toyota Motor Sales U.S.A., Inc., 184 F.3d 761, 763 (8th Cir. 1999). As discussed above, the Plaintiff has not presented specific facts in the record to support her allegation that she was harassed by Michael Marx.

As previously stated, to be actionable as sexual harassment, the conduct in question must have been sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. Hathaway, 132 F.3d at 1221, quoting Harris, 510 U.S. at 21, 114 S. Ct. at 370. When viewing only the evidence presented in the factual record, as is required at the summary judgment stage, rather than the allegations included in the Complaint, the Court finds that the Plaintiff has not presented sufficient evidence to support a claim of sexual harassment as a matter of law. No reasonable jury could conclude, based upon the evidence submitted to the Court, that the conduct in question was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment.

Furthermore, Title VII does not create a cause of action for all unpleasant or abusive behavior in the workplace. Hathaway, 132 F.3d at 1221. Rather, the plaintiff must show that the conduct was discriminatory in nature and that she was singled out for such treatment on the basis of her membership in a protected category under the statute. Hathaway, 132 F.3d at 1221. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, __, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998). Accordingly, the plaintiff must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex." Oncale, 523 U.S. at __, 118 S. Ct. at 1002.

The Plaintiff has not demonstrated that she was exposed to disadvantageous terms or conditions to which male postal employees were not exposed, or that the actions of Lori Peterson constituted discrimination because of sex. Rather, the Plaintiff testified at her deposition regarding the actions of Lori Peterson as follows:

> Q: So you're saying Lori Peterson had trouble with both male and female employees?
> A: No matter what level, management or craft.

(Deposition of Jean Sandberg at p. 118.)

> Q: So she attacked everybody?
> A: Only the ones that she didn't like.

(Sandberg Dep. at p. 131.)

Therefore, while the record supports a finding that Ms. Peterson did not like the Plaintiff, the record does not contain evidence that Ms. Peterson discriminated against the Plaintiff because of the Plaintiff's sex.

Consequently, because the Plaintiff has not set forth specific facts in the evidentiary record so as to enable a reasonable jury to conclude that the Plaintiff's work environment was hostile or abusive, and because the record is devoid of evidence that the Plaintiff was discriminated against because of her sex, the Plaintiff's claim of a hostile environment must be dismissed as a matter of law.

**C. Sex Discrimination**

The Plaintiff has included a separate claim for sex discrimination under Title VII in Count Two of the Complaint. Title VII prohibits an employer from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Schmedding v. Tnemec Company, Inc., 187 F.3d 862, 864 (8th Cir. 1999).

To set forth a claim of sex discrimination under Title VII, the plaintiff must demonstrate (1) that she is within the protected class; (2) that she was qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that nonmembers of her class were not treated the same. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999).

In the present matter, the Plaintiff alleges that she was denied overtime opportunities, denied access to the computer, and denied training and promotional opportunities, all of which were made available to male employees. (Complaint at ¶¶ 41-43.)

However, as previously stated, the party opposing a motion for summary judgment may not rest upon mere allegations, but must set forth specific facts in the record. Anderson, 477 U.S. at 256, 106 S. Ct. at 2514; Krenik, 47 F.3d at 957. The Plaintiff simply has not submitted any evidence to the Court in connection with the present motion to support her allegations regarding gender discrimination as to overtime benefits, computer access, or training or promotional opportunities.

The Defendant, on the other hand, submitted a declaration from a manager at the St. Paul Office, Drew Aliperto. Mr. Aliperto testified that the Plaintiff received more overtime than many of her male colleagues, and that the Plaintiff was not available to work overtime during large periods of 1997 and 1998. (Declaration of Drew Aliperto at ¶¶ 4(b), 5-6.) Mr. Aliperto's declaration is not contradicted by other evidence in the record; indeed, Mr. Aliperto's declaration constitutes the only evidence on the subject of overtime that was submitted with the present motion.

As the Plaintiff has not set forth specific facts in the record to support her allegations that the Defendant discriminated against her with respect to compensation, terms, conditions, or privileges of employment because of her sex, the Plaintiff's claim of sex discrimination must be dismissed as a matter of law.

**D. Retaliation under Title VII**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate" against an employee who has "opposed any practice made an unlawful employment practice by this subchapter, or . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a). Hoffman v. Rubin, 193 F.3d 959, 963 (8th Cir. 1999). A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. Sims v. Health Midwest Physicians Services Corp., 196 F.3d 915, 921 (8th Cir. 1999).

In the present matter, the Plaintiff alleges that, in retaliation for her numerous EEO complaints and grievances, she was required to undergo a psychological fitness examination and

was given a negative recommendation that resulted in her being removed from consideration for a promotion.

The Eighth Circuit has held that actions short of termination may constitute adverse actions within the meaning of the statute. Smith v. St. Louis University, 109 F.3d 1261, 1266 (8th Cir. 1997). The Eighth Circuit summarized several such decisions in Cross v. Cleaver II, 142 F.3d 1059, 1073 (8th Cir. 1998), citing Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (sufficiently adverse actions include discharge, reduction of duties, actions that disadvantage or interfere with the employee's ability to do his or her job, and "papering" of an employee's file with negative reports and reprimands); Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997) (retaliation took the form of transfer to a less desirable position, because that position offered little opportunity for salary increases or advancement); and Smith v. St. Louis Univ., 109 F.3d 1261, 1265-66 (8th Cir. 1997) (retaliation took the form of negative references to prospective employers).

In the present matter, Supervisor Thomas Roth-Yousey explicitly admitted at his deposition that he requested a psychological fitness examination for the Plaintiff because he believed the Plaintiff was paranoid, based upon the grievances and EEO complaints that the Plaintiff had filed. (Deposition of Thomas Roth-Yousey at p. 159.) Mr. Roth-Yousey further admitted that, although a male employee had also complained about a hostile work environment, Mr. Roth-Yousey had not formed the opinion that the male employee was paranoid. (Roth-Yousey Dep. at p. 160.) Under such circumstances, the Court finds that summary judgment would be inappropriate. A reasonable jury could conclude, based upon the evidence presented in the record, that the Defendant retaliated against Ms. Sandberg in violation of Title VII.

The Plaintiff also submitted evidence that Ms. Sandberg was removed from consideration for the Associate Supervisor Program based upon a negative recommendation from supervisor

Mary Alt. (Deposition of Judith A. Thon at p. 37, Ex. 2.) A different supervisor, Gerald Kamrowski, signed an EEO investigative affidavit in which he stated that, as the Plaintiff's main supervisor, he had an extensive opportunity to observe the Plaintiff's work, while Ms. Alt was seldom present during the Plaintiff's shift. (Alt Dep., Ex. 12.) After the Plaintiff showed Mr. Kamrowski Ms. Alt's negative recommendation, Mr. Kamrowski volunteered to write a recommendation for the Plaintiff, as he felt she was highly qualified for the program and he strenuously disagreed with Ms. Alt's review. (Id.) Ms. Sandberg had also received a score of "Strong" on both portions of the Postal Service In-Service Exam. (Thon Dep., Ex 3.)

The Eighth Circuit has held that where a lower evaluation score was not used as the basis for any action against the employee, the lower evaluation could not fairly be considered an adverse employment action. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). In the present matter, however, the Plaintiff has submitted evidence that the negative evaluation was used to remove her from consideration for a promotion. Where the negative evaluation is used as the basis for other employment actions, a reasonable jury may conclude that the plaintiff suffered an adverse employment action sufficient to state a retaliation claim. Cross, 142 F.3d at 1073, citing Montandon, 116 F.3d at 359 (sufficiently adverse actions include termination, demotion, transfers involving changes in pay or working conditions, and negative evaluations used as the basis for other employment actions).

Therefore, because a reasonable jury could conclude, based upon the evidence in the record, that the Defendant retaliated against the Plaintiff for her numerous complaints of harassment and discrimination, summary judgment may not be granted as to the Plaintiff's retaliation claim.

## Conclusion

The Plaintiff has failed to set forth specific facts in the record to support her claims of sexual harassment or sex discrimination under Title VII. However, the Plaintiff has submitted evidence sufficient to enable a reasonable jury to conclude that the Defendant retaliated against her for her claims of harassment and discrimination.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Defendant's Motion for Summary Judgment (Doc. No. 109) is **GRANTED IN PART** and **DENIED IN PART**.

2. Count One, Sexual Harassment, is **DISMISSED WITH PREJUDICE.**

3. Count Two, Sex Discrimination, is **DISMISSED WITH PREJUDICE.**

Dated: February 1, 2000

DONOVAN W. FRANK
Judge of United States District Court

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Civil No. 00-2580 (MJD/JGL)

-----------------------------------------------

Joyce E. Lambert,

Plaintiff,

-vs-

COPY

John E. Potter,
Postmaster General, the
United States Postal Service,
and Judith Thon,

Defendants.

-----------------------------------------------

VOLUME I

Deposition of JUDITH THON, taken pursuant to Notice of Taking Deposition, and taken before Becky Skorpak, a Notary Public in and for the County of Dakota, State of Minnesota, on April 23, 2002, at 210 North River Ridge Circle, Burnsville, Minnesota, commencing at approximately 9:40 a.m.

* * *

AFFILIATED COURT REPORTERS
2935 OLD HIGHWAY 8
ST. PAUL, MN 55113

(612)338-4348

CULBERTH AFFIDAVIT
EXHIBIT 2

A. I don't recall.
Q. Okay. So this deposition that you gave that was in the last calendar year -- not within the last calendar year, but within the last 12 months?
A. Yes.
Q. That's about a case that is continuing right now and is before the Federal District Court in Minnesota, is that right?
A. Yes.
Q. And there are claims of retaliation and gender discrimination, right?
A. Yes.
Q. And you have been named as one of the persons who has allegedly retaliated against Ms. Sandberg, is that right?
A. Yes.
Q. Who else has been named as allegedly retaliating against Ms. Sandberg?
A. (No response.)
Q. And I'm limiting it to the present action that is before the Federal District Court. Not any prior actions.
A. I can't answer that question.
Q. Why not?

A. I can't answer it because I do not know if I recall who is in the first case and who is in the second case.
Q. You can't distinguish between the two?
A. I can't remember who was named in the first or the second case.
Q. So you can't distinguish between the two cases?
A. I do not recall the list of names, if any, in the cases as to who was the first and who was the second case.
Q. Okay. Why don't you just list out for me all of the people that you know Ms. Sandberg has claimed has retaliated against her at the post office.
MR. SIEKERT: In either the first or second case?
MS. CULBERTH: Yes. Since she can't distinguish between the two.
THE WITNESS: Oh, let's see. Arlene Leblanc, Drew Aliperto, I believe Mike Marx was named in the -- in one of the cases.
BY MS. CULBERTH:
Q. As a retaliator now, not as a harasser or any other.

A. I can't.
Q. You can't make even that distinction?
A. I don't remember.
Q. Okay.
A. My last name was Mike?
Q. Marx.
A. Uh-huh. John Zieba. There were some one, maybe two, craft employees that worked in her unit. I can't recall the rest.
Q. And so this list of names, you're not saying that she said that all of these people retaliated against her. These were just people who were named for having done something or allegedly done something that was discriminatory, is that right?
A. Those are names that I recall in either one or both of the cases that were named by her.
Q. Okay.
A. Ms. Sandberg.
Q. Okay. You have had some training in discrimination and harassment over the years, haven't you?
A. Yes.
Q. Okay. And in your training, you have been taught what constitutes retaliation in

violation of Title VII?
A. Yes.
Q. Okay. And what is it that you have learned?
A. I'm not sure I understand the question.
Q. Define for me what it is to retaliate against someone in violation of Title VII.
A. I guess I would define it as repeated occurrence, generally of treating an individual differently because of past issues they have brought to management's attention.
Q. Is it your understanding that it has to be a repeated occurrence of treating someone differently in order to constitute retaliation?
A. That may not be a good choice of words.
Q. So if you fired someone once, that could constitute retaliation?
A. Yes.
Q. So, treating someone differently because they filed an EEO claim, is that what your testimony is?
A. I don't recall that I said that.
Q. Okay. Why don't we try again. What is it that you have learned in your training and is your understanding constitutes retaliation

under Title VII?
A. I just answered that.
Q. Would you mind doing it again?
A. Treating an individual differently when it had been brought to the management's attention that they had felt discriminated against or retaliated against.
Q. Okay. And you have also had some classes with respect to gender discrimination at the post office, is that right?
A. Yes.
Q. Can you please tell me what is your understanding of gender discrimination.
A. I would believe that to be treating an individual differently because of their gender in the workplace.
Q. How would you distinguish then between gender discrimination and retaliation.
A. Where it appears as if a similarly situated individual is treated differently, and the only difference being that that individual is of a different gender.
Q. Okay. That's your definition of deferential treatment based on gender. So how do you distinguish between that and retaliation?

A. If an individual felt that they had been retaliated against or treated differently based on their sex or gender. An individual can be retaliated against for other reasons other than their gender.
Q. Okay. And when we're talking specifically about retaliation under Title VII, that retaliation is based on what?
A. I can't answer that question.
Q. Okay. In the first Sandberg case, that Sandberg case went to trial, is that right?
A. Yes, it did.
Q. Did you testify at the trial?
A. Yes.
Q. In that case, Jean Sandberg had accused you of retaliating against her, is that right?
A. I believe that is correct, without going through my testimony. It was a few years back.
Q. And the jury rendered a verdict that said, yes, indeed, they believed that you had retaliated against Sandberg, is that right?
A. I believe the verdict was that the jury believed that -- that the Postal Service had retaliated against Ms. Sandberg.

Q. And you were one of the people at the Postal Service who was accused of retaliating against her in that trial, right?
A. I believe that is the way it was stated.
Q. Do you know whether or not that verdict has been appealed?
A. Do I know?
Q. Yes.
A. I do not.
Q. Do you know whether or not that judgment has been paid?
A. I do not know.
Q. You were not named individually in that case as being personally liable for any retaliation, were you?
A. I was not.
Q. And there weren't any Family Medical Leave Act claims in that case, right?
A. I don't think so, but I'm not sure.
Q. You said that you have had your deposition taken three times. We've talked about two in relation to the Sandberg case. Will you tell me what the third one was?
A. The third, which was the earliest, the furthest back, was a deposition taken

somewhere between 1992 and 1994, I think. Somewhere in that timeframe.
Q. What was that matter?
A. That matter was concerning a supervisor manager in the Omaha plant -- Omaha, Nebraska plant who had felt that the manager that came after me had not promoted him when he should have been promoted.
Q. Did this supervisor make any claims that you had a hand in him not being promoted?
A. Without going over the trial information, I don't recall.
Q. But this did go to trial?
A. Yes.
Q. What was the outcome?
A. He lost.
Q. What were his claims based on?
A. I don't recall.
Q. Were they retaliation?
A. I don't recall.
Q. Was it a discrimination suit?
A. I wasn't a prime player in the -- in the case. It happened after I had left.
Q. Why did they ask you to testify then?
A. They asked me to testify because I was his

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - -

JOYCE E. LAMBERT,

Plaintiff,

vs. File No. 00-2580 MJD/JGL

JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL, and UNITED STATES POSTAL SERVICE, and JUDITH THON, individually,

Defendants.

- - - - - - - - - - - - - - - - -

VOLUME III

Deposition of JUDITH A. THON, taken pursuant to Notice of Taking Deposition, and taken before Gary W. Hermes, a Notary Public in and for the County of Ramsey, State of Minnesota, on the 18th day of September, 2002, at 1050 Piper Jaffray Plaza, St. Paul, Minnesota, commencing at approximately 11:45 o'clock a.m.

AFFILIATED COURT REPORTERS
2935 OLD HIGHWAY 8
ST. PAUL, MN 55113 (612)338-4348

COPY

CULBERTH AFFIDAVIT
EXHIBIT 3

get Joyce Lambert scheduled for a fitness-for-duty exam, is that right?
A. Standard process, yes.
Q. And you state in your letter of October 19th, 1999, that your reason for doing that is that you had received Dr. Jetzer's letter and, based on his review of the case, you were requesting the fitness-for-duty exam, is that right?
A. Yes.
Q. And what you gleaned from Dr. Jetzer's letter, which you've seen already now, is Exhibit 30 --
A. Exhibit who?
Q. 30.
A. Yes.
Q. What you gleaned from that is that the medical information short form was inadequate and that's why you checked that box in the fitness-for-duty exam, right?
A. Yes.
Q. What was your reason for checking "behavioral problem, performance and attitude" as a reason for fitness-for-duty?
A. (Examining documents) The purpose for this document is to provide the doctor or the medical person who will do the

fitness-for-duty, this is our way of communicating that with -- that individual more than likely has not seen the employee, in this case Ms. Lambert -- what any concerns might be. So this is our method to communicate to that person any of our concerns and what the expectations were of that employee in his or her job, which is the reason for attachment 2.

Getting back to your question concerning check on behavioral, I checked that box based on Dr. Jetzer's here -- concerns here or, as he states it in Exhibit Number 30, and the word under my name Judith is "performance," although I don't think you can see it very well, relates to my concern prior in this year of performance on the job as an MDO.

Q. So your reason for requesting the fitness-for-duty exam for Joyce Lambert was because of your concerns in her performance of the job?

A. I checked a couple checks, that truncates my -- I feel that truncates my response to you.

Q. Let me see if I can say it better.

The reason for you requesting the fitness-for-duty exam, as you have indicated on

this form, is because, number one, you believed that there was inadequate medical information and, number two, because you had concerns about Ms. Lambert's behavior, and in particular, her performance on the job?

A. Correct.

Q. Now, in how many fitness-for-duty examinations have you been the appointing or referring official before examination?

A. Two-part answer. As facility head, installation head, front manager, I have to sign all these whether they're a mail handler or supervisor or manager such as Joyce. So you would see my signature on all these. That is standard.

The second part to your question was, if you might repeat it, that I was what? The requester, is that your second part?

Q. I'm just reading from the appointing/referring official before examination.

A. You will see my signature on any employee, craft or management, like if the St. Paul plant wants a fitness-for-duty on that individual, you will see on those documents, and it's usually right in this area (Indicating), my